In the Matter of the Judicial Settlement of the Final Account of Proceedings of JOHN H. PERRY and Another, as Executors, etc., of VIRGINIA MARQUAND MONROE, Deceased.

Surrogate's Court, Westchester County, May 17, 1928.

Wills — construction — decedent by will gave her stepsister specific bequest, but stepsister died prior to decedent — legacy did not lapse upon death of stepsister — children of stepsister are entitled to legacy under Decedent Estate Law, § 29 — decedent gave each servant who had lived with her " continuously for not less than two years " at time of her death, specific bequests — servants who came in decedent's house by day are entitled to bequests.

On this accounting proceeding it appears that decedent, who was the only child of the father's first marriage, was adopted, on her mother's death, by her

mother's brother.  Her father remarried and had a daughter by the second marriage, to whom decedent by will made a specific bequest of money.  Because decedent's stepsister died prior to decedent, the executors claimed that the legacy lapsed.

The legacy did not lapse.  Section 29 of the Decedent Estate Law permits the children of the natural sister of the testatrix herein to take the gift made to their mother.  The right of inheritance from the natural parents remains unaffected by adoption.

A provision in the will by which decedent gave to each servant who had " lived with me continuously for not less than two years " at the time of her death, and at that time was in her employ, the sum of $200, included those servants who came in by the day and worked in decedent's household; " lived with me continuously " does not necessarily mean living at decedent's house.

PROCEEDING by executors for accounting involving question as to whether legacy lapsed on death of legatee prior to death of testatrix.

*Fletcher & Brown*, for the executors.

*Hardin, Hess, Eder & Freschi*, for the claimant Parkman T. Mason.

*Taft & Sherman*, for American Seamen's Friend Society.

*John J. Ackerman*, special guardian.

SLATER, S.  The decedent was the only child of the first marriage of her father.  Upon the death of her mother, she was adopted by her mother's brother, Frederick Marquand, by a special act of the State of Connecticut.  (General Laws of Connecticut, 1881, chap. 109.)  After the death of his first wife, the father of Mrs. Monroe again married, and Mrs. Fanny Tompkins Mason was his daughter by the second marriage.  Mrs. Mason died prior to the death of Mrs. Monroe, leaving her surviving four children, including Parkman T. Mason.

By subdivision " G " of paragraph " forty-seventh " of Mrs. Monroe's will, she provides as follows: " I give to Fanny Tompkins Mason (Mrs. Edward T. Mason), the sum of Three Thousand Dollars ($3,000)."

The children of Mrs. Mason claim that the legacy to Mrs. Mason did not lapse upon her death prior to the death of Mrs. Monroe, but that they are entitled to the legacy under section 29 of the Decedent Estate Law (as amd. by Laws of 1912, chap. 384).

It is the contention of the executors that the legacy did lapse upon the death of Mrs. Mason, and that by reason of the adoption of Mrs. Monroe by Frederick Marquand, Mrs. Fanny Tompkins Mason ceased to be a sister of the testatrix for the purposes of section 29 of the Decedent Estate Law.

The question will be considered as though Mrs. Monroe had been adopted under the laws of the State of New York.  (*Matter of Leask*, 197 N. Y. 193.)

The attorneys for the executors have submitted the cases of

*Carpenter* v. *Buffalo General Electric Co.* (213 N. Y. 101); *Bourne* v. *Dorney* (184 App. Div. 476, 485; affd., 227 N. Y. 641); *Hopkins* v. *Hopkins* (202 App. Div. 606, 608; affd., 236 N. Y. 545) as affecting and throwing light upon the question submitted.

The claimant submits in support of his contention *Matter of Landers* (100 Misc. 635, 641); and for discussion upon certain phases of the law of adoption, the following cases: *Matter of Benson* (99 Misc. 222); *Matter of Haight* (63 id. 624); *Kettell* v. *Baxter* (50 id. 428); *Matter of Powell* (112 id. 74); *Winkler* v. *New York Car Wheel Company* (181 App. Div. 239).

The opinion in the *Carpenter* case (p. 105) refers to the various legislative enactments relating to adoption. A perusal of these laws (Dom. Rel. Law, § 114, as amd. by Laws of 1916, chap. 453) indicates that the right of inheritance from the natural parents remains unaffected by the adoption; creates the right of inheritance from each other (meaning the minor and the adoptive parent), and that such right of inheritance extends "to the heirs and next of kin of the person adopted and such heirs and next of kin shall be the same as if he were the legitimate child of the person adopting." This last statement creates new heirs at law and next of kin, who inherit *from* the minor, and may well be a substitution for the present Statute of Distribution. (*Ryan* v. *Sexton*, 191 App. Div. 159, 162.) Thus a rule of law is made for the flow of property *from* the adopted child. The child's right of inheritance *from* the natural parent remains unaffected by such adoption. It is so declared in the law. The right of inheritance *from* the natural kindred is unchanged.

As the law of adoption is in derogation of the common law, nothing can be assumed, presumed or inferred, and what is not found in the statute law is a matter for the Legislature to supply and not for the courts.

The instant question is not one of inheritance as referred to in the *Landers* case, where the learned surrogate of Oneida county held that the adopted child could share in her natural brother's estate. There is nothing whatsoever in the law of adoption of the State that says that the adopted child could share in her natural brother's estate. There is nothing whatsoever in the law of adoption of the State that says that the adopted child cannot take *from* the natural brothers and sisters; there is nothing in the adoption law that dissolves the natural relationship of the kindred. Consequently, the natural sister or brother is still such. No such rights have been uprooted and destroyed. The adopted child could have a natural brother or sister, as well as an adopted brother or sister, if there be such. (*Matter of Foster*, 108 Misc. 604.)

Surrogate's Court, Westchester County, May, 1928.       [Vol. 132

It is my conclusion that section 29 of the Decedent Estate Law permits the children of the natural sister of the testatrix herein to take the gift of $3,000, made to the natural sister, their mother. The Legislature had the power, in order to prevent the lapsing of a devise or bequest, to provide that in the event of the death of a child, or a brother, or sister of the testator, during the lifetime of the testator, the gift should not lapse, but the property so bequeathed should vest in the surviving child or descendant of the legatee, as if such legatee had survived the testator and had died intestate.

The natural relationship of the kindred — in this case, the sister - was not extinguished by any legislative enactment.

As to the other question. Paragraph " forty-eighth," subdivision " BB," of the will provides as follows: " I give to each servant, other than those above mentioned, who has lived with me continuously for not less than two years at the time of my death and at that time is in my employ, the sum of Two Hundred Dollars ($200), and to such as have lived with me for one year or more, but less than two years at the time of my death, each the sum of One Hundred Dollars ($100)."

It appears by an affidavit of one of the executors that there is one person who did work for the decedent from the year 1924 to the time of her death, and one who took on employment in October, 1925. Neither lived in or at the home or country place occupied by the testatrix, but " were women who were often employed by the testatrix to aid the servants who were employed at testatrix's residence." The affidavit indicates that they were paid every two weeks at the rate of four dollars per day. Evidently they were women called in to do a day's work, sometimes for the full week, sometimes for fewer days.

The question is what did the testatrix mean by the language " who has lived with me continuously." " Lived with me continuously " does not necessarily mean living at the testatrix's home. I hold that " lived with me " was intended to cover those servants who came in by the day and who probably took their noon-day meal at the house. In other words, it means those living in the testatrix's service. (*Blackwell* v. *Pennant*, 9 Hare, 551, 553.)

" Continuously " does not necessarily mean working every day. A person may have " continuous " use of a stream of water — it is not necessary to use it every hour or every day. A corporation may have paid dividends " continuously " for many years, and the payment may have been once, twice or four times per annum. So a person may work for another " continuously " three days a

week, four days a week, or all the week. It means a continuous period of employment, continuous character of service — not consecutive days of labor.

The point presented for decision depends upon the intent of the testatrix, and it is my opinion from the facts presented to me that it was her intention to give the legacy hereinabove referred to to these two employees.

The following cases have dealt with similar, but by no means like, conditions: *Matter of Mitchell* (114 Misc. 370); *Matter of Altman* (115 id. 476); *Lafrinz v. Whitney* (195 App. Div. 131).

Submit decree in accordance with these views.