In the Matter of the Estate of Louis N. Lesser, Deceased.

Surrogate's Court, Kings County, June 2, 1936.

*McLaughlin & Stern* [*Martin Lippman* and *Stephen S. Bernstein* of counsel], for the Manufacturers Trust Company, as corporate trustee, and Charles C. Moore, as individual trustee, etc., petitioners.

*Charles G. Coster* [*Herman Gottlieb* of counsel], for Abraham Midonick and others, executors and trustees.

*Arthur T. O'Leary* [*Thomas A. McCarthy* of counsel], special guardian for Millard T. Midonick and others, infants.

WINGATE, S. At first blush, there would appear to be a certain incongruity in the positions adopted by the respondents in this proceeding. The petitioners seek the permission of this court to issue execution upon a judgment for seventy thousand odd dollars recovered in the Supreme Court, which was affirmed by the Appellate Division (*Manufacturers Trust Co.* v. *333 West 86th St. Corp.*, 241 App. Div. 814).

As noted in the opinion on the original submission of this application (*Matter of Lesser*, 154 Misc. 364, 367), the usual issue of inadequacy of assets is here absent, the defense of the respondents being in substance an equitable set-off, to the effect that the judgment, if collected, would preponderantly inure to them by reason of their alleged equitable rights against the trustee for the proceeds collected thereby while serious injury to the estate would result from initial enforcement in full.

In the development of this defense on the trial, the respondents appear to have strayed from the basis of equitable consideration first invoked and to seek to compel this court, in purported emulation of the familiar figure of justice, to keep both eyes blindfolded to the essential facts of the situation.

The facts underlying the Supreme Court judgment, enforcement of which is here sought, are not in dispute. Under date of February 20, 1928, 333 West Eighty-sixth Street Corporation gave a mortgage to the predecessor of the petitioner, on the premises indicated in its title, as security for a series of participation certificates aggregating $1,400,000, to mature seriatim on various dates between February 20, 1930, and February 20, 1940. This series of certificates was designated " Series A."

Simultaneously with the giving of this mortgage three individuals, of whom the present testator was one, executed and delivered to the corporate trustee under the mortgage a guaranty of payment " as and when the same became due and payable of the amount of * * * $100,000 * * * of the principal of said bond for * * * $1,400,000 * * * first becoming due and payable pursuant to the terms of said bonds and said indenture or deed of trust and ' Series A' certificates of like amount first becoming due and payable and secured thereby."

It appears to be conceded that the first $100,000 of the total of $1,400,000 certificates to become due and payable were those numbered from 1 to 134, inclusive.

The payments due from the mortgagor on February 20 and August 20, 1930, aggregating a principal total of $30,000, were duly paid, but a default occurred in respect to the principal sums due on February 20, 1931.

A foreclosure proceeding was instituted and the guarantors were joined as parties defendant in a " separate and distinct cause of action," which recited in substance the facts respecting their guaranty hereinbefore noted. The demand for judgment against them was that they " be adjudged to pay any deficiency which remains unpaid on the amount of  *  *  *  $100,000  *  *  * of certificates ' Series A,' first becoming due and payable pursuant to the terms of the said Indenture after applying all the moneys applicable to subdivisions (a) and (b) of Paragraph ' 5 ' hereof and to so much of the payments described in subdivision (c) thereof as applied to the payment of such certificates."

The answers of the individual defendants, so far as presently material, were directed merely to a claim of total discharge of the guaranty by reason of alleged failure to enforce the terms of the principal obligation, and to the alleged fact that under the guaranty they were liable only for so much of the first $100,000 as had not been paid, and that payment of $30,000 thereof had been made.

The issues thus raised were duly tried and a decision rendered, which found that the individual defendants " jointly and severally unconditionally guaranteed payment as and when the same became due, of  the  amount  of  *  *  *  $100,000  *  *  *  of  the principal of said bond for  *  *  *  $1,400,000 first becoming due and payable, pursuant to the terms of said bond and said indenture or deed of trust and the Series A certificates on like amount first becoming due and payable and secured thereby and jointly and severally guaranteed, promised and agreed, in the event of a fore-closure of said mortgage or deed of trust and of a deficiency, to pay forthwith the amount of any such deficiency to the extent that  the  aforesaid  sum  of  *  *  *  $100,000  *  *  *  first becoming due and payable, remains unpaid."

Based on this finding of fact, the court attained the following conclusion of law: " That in the event that by reason of deficiency, judgment be entered in this action against the " individual defendants named " such judgment shall inure to the benefit only of the holders  of  the  *  *  *  $70,000  *  *  *  of  the  Series  A participation certificates first becoming due and payable and now remaining unpaid."

The judgment contained recitals to the same effect, but the applicable decretal clauses were less explicit and read: " Ordered * * * that if the proceeds of sale be insufficient to pay the amount due to the plaintiffs for the benefit of the holders of the Series A participation certificates and Series A interest coupons, with interest, expenses and costs as aforesaid, said Referee shall specify the amount of such deficiency in his report of sale and the [individual defendants] pay to the plaintiffs herein, for the benefit of the holders of the Series A participation certificates and interest coupons thereunto attached, the amount of * * * $70,000 * * * with interest thereon from February 20, 1931, and that the plaintiffs have judgment against said defendants accordingly and have execution therefor."

The defense of the respondents as developed in this proceeding is predicated solely on the variance in language between this decretal clause and the recitals of the decree and the decision of the court upon which it was based. They assert that they have acquired a large proportion of the Series A certificates other than those first maturing and unpaid, and contend that the decree adjudicates that the $70,000 payable by them thereunder is to be distributed *pro rata* to the holders of all Series A certificates, both the $70,000 par value first maturing and unpaid, and also the later ones in consequence of which they will be entitled to a preponderant proportion of the sums collectible on the execution, if issued.

This contention is fundamentally contrary to the basic principles of the doctrine of *res adjudicata*. The leading case on this subject is unquestionably *Rudd* v. *Cornell* (171 N. Y. 114), the following excerpts from which are decisive of the present controversy (p. 127): " It is settled by the decisions of this court that a judgment is conclusive in a second action only when the same question was at issue in the former suit and the subsequent action was between the same parties or their privies, and that the conclusive character of a judgment extends only to the precise issues which were tried in the former action; they must be identical in each action, not merely in name, but in fact and in substance, and the party seeking to avail himself of a former judgment must show affirmatively that the question involved in the second action was material and actually determined in the former, as a former judgment will not operate as an estoppel as to immaterial or unessential facts, even though put in issue and directly decided. In other words, a former judgment is final only as to the facts which are actually litigated and decided, which relate to the issue therein, and the determination of which was necessary to the determination of that issue. (*Reynolds* v. *Ætna Life Insurance Co.*, 160 N. Y. 635, 651.) A judg-

ment is conclusive upon the parties only in respect to the grounds covered by it and the facts necessary to uphold it, and although a decree, in express terms, professes to affirm a particular fact, yet, if that fact was immaterial to the issue and the controversy did not turn upon it, the decree will not conclude the parties in reference to such fact. (*People ex rel. Reilly* v. *Johnson*, 38 N. Y. 63.) A judgment does not operate as an estoppel in a subsequent action between the parties as to immaterial or unessential facts, even though put in issue by the pleadings and directly decided. It is final only as to such facts as are litigated and decided, which have such a relation to the issue that their determination was necessary to the determination of that issue. (*House* v. *Lockwood*, 137 N. Y. 259, 268; *Stannard* v. *Hubbell*, 123 N. Y. 520.) ' In order that a judgment should have the effect claimed, it is not enough that the party produce a record showing a judicial determination of the same question litigated in his favor, but it must also appear that it was rendered upon the merits, upon a material point and substantially upon the same facts presented in the subsequent case.' (*Shaw* v. *Broadbent*, 129 N. Y. 114, 123; *Converse* v. *Sickles*, 146 N. Y. 200, 208; *Genet* v. *Del. & Hud. Canal Co.*, 163 N. Y. 173; *Same* v. *Same*, 170 N. Y. 278.) "

Under the facts here disclosed, the only issue tendered and tried in the Supreme Court action, so far as this estate was affected thereby, concerned the right of the plaintiff to recover on the individual contract of guaranty. Two and only two issues were litigated, the first, of whether the guaranty had been voided in its entirety, was decided adversely to these respondents; in the second, as to whether they were liable to the plaintiff on that guaranty to the extent of $100,000, they were held conditionally liable to the extend of $70,000 and interest only. No issue whatsoever was tendered as to what the plaintiff should do with that recovery if or when it reached its hands. That was a matter which did not concern the guarantors in their capacity as such but was a question in which the plaintiff and the certificate holders as a whole, as a composite group, were alone interested. The recovery by the plaintiff was purely in a representative capacity. The present respondents were not parties to the action in their capacity as distributees but merely in that of obligors.

In consequence, that litigation in a very real sense was between parties different from those here present, but aside from this feature, " the same question was ' not ' at issue in the former suit." In respect to the issues then tried, the question of manner of distribution was " immaterial " and " unessential," wherefore the decision in respect thereto bound no one, and any recitals or adjudications on the subject were pure surplusage.

Reduced to its lowest and only effective terms, therefore, the judgment so far as it affected the present respondents determined merely that they should pay to the plaintiff a specified sum, with the subsequent use thereof by the latter, an unessential question not put in issue and consequently incapable of valid determination.

An issue as to the ultimate disposition of the fund might conceivably have been raised in the Supreme Court action by way of equitable set-off in a manner similar to that here attempted but the respondents either did not think of it or chose to refrain from so doing.

The question thereupon arises as to whether such a defense is proper in this court in an attempt to invalidate by indirection the effect of this affirmed judgment of the Supreme Court. This question is pertinent at the moment in spite of the obvious fact, on the record, that the plaintiff's rights of recovery against the individual defendants inured primarily, if not wholly, for the benefit of the holders of the unpaid portion of the first $100,000 of certificates to mature, since it is apparently conceded that the respondents now hold approximately $1,500 face value of these certificates. These at least they seek to set off against the face amount of the Supreme Court judgment.

The primary purpose of section 151 of the Decedent Estate Law is to prevent one creditor from obtaining an undue advantage over another in the application of the assets of the estate. It is not designed to constitute the surrogate a court of review of matters properly determined or determinable in other tribunals.

The answer of the respondent in the first instance indicated a potential situation so shocking as to raise an inference that equitable relief should be available in the interest of substantial justice. The demonstration of the trial has dispelled the initial indication. There is no demonstration that the satisfaction of this long overdue debt will result in any injury to the rights of any other creditor or that any undue hardship will be imposed upon the estate. There is accordingly no sound reason why execution should not issue and the application therefor is granted, with costs.

Enter decree on notice in conformity therewith.