In the Matter of the Estate of STEWART G. B. GOURLAY, Deceased.

Surrogate's Court, Kings County, April 9, 1940.

*Joseph J. Juhass* [*William L. Bowman* of counsel], for Lester C. Scott, as administrator, etc., petitioner.

*Hamilton & Freeman*, for the American Surety Company of New York, respondent.

WINGATE, S. The underlying question in this proceeding is whether a child who has been adopted is, or is not, a statutory distributee of his *natural* grandfather, his natural father having predeceased such grandfather.

The pertinent facts are undisputed. The present decedent, Stewart G. B. Gourlay, who died on April 11, 1933, had two sons, Everett M. Gourlay and Amos S. Gourlay. The present petitioner, Lester T. Scott, was the natural son of Amos and his wife, Gertrude, and was born in New Jersey in September, 1901. In the following month he was legally adopted in the Monmouth County Orphan's Court of New Jersey by Joseph Scott and his wife, Sarah.

Amos Gourlay, Lester's natural father, died in 1906, predeceasing his own father, the present decedent, by some twenty-seven years. Upon the death of the latter his widow petitioned for the issuance of letters of intestate administration to her other son, Everett, reciting that the sole distributees of the decedent were herself and such other son. Letters were issued to him on May 2, 1933, upon his qualification by filing a bond of the American Surety Company.

In June, 1934, Lester Scott petitioned for the revocation of the letters issued to Everett on the assertion that he was a son of Amos who had predeceased the decedent and that the omission of his name as a distributee in the original petition constituted a false suggestion of a material fact. The surety was served and filed a notice of appearance but did not actively participate in the pro-

ceeding. Everett interposed a general denial. A hearing was had and the petition of Lester was granted to the extent of directing Everett to file an account of his proceedings. A copy of the order in this regard and a bill of costs, as fixed by the surrogate, were served on the surety, which took no action in respect thereof.

Everett failed to account, his letters were revoked, and he was removed from office by order dated February 26, 1935. On the eighth of March following letters *d. b. n* were issued to Lester Scott. The latter instituted a proceeding against the surety in the Supreme Court and was initially successful, but this determination was reversed on appeal and the proceeding dismissed without prejudice on the ground that the proper forum for the enforcement of the rights of the estate against the removed administrator was in this court.

The administrator *d. b. n.* has now instituted the present proceeding against the former administrator and the surety to compel the filing and settlement of the account of the latter or, in the alternative, that it be stated by this court. The former administrator is said now to be a resident of a foreign jurisdiction, but the surety has appeared and is stoutly defending the proceeding.

When the nature of the litigation and the capacity of the petitioner are recalled the answer of the surety is somewhat strikingly deficient in merit. The petition is by the administrator *d. b. n.* of the assets of this decedent. The fact that he chances, in his individual capacity, to be Lester C. Scott, is wholly immaterial, since it is elementary that a person, in his representative capacity, is a wholly distinct legal personage from himself in his individual capacity. (*Rathbone* v. *Hooney*, 58 N. Y. 463, 467; *Collins* v. *Hydorn*, 135 id. 320, 324, 325; *Leonard* v. *Pierce*, 182 id. 431, 432; *Pardee* v. *Mutual Benefit Life Ins. Co.*, 238 App. Div. 294, 296, 297; *Opdyke* v *Marble*, 44 Barb. 64, 68; *Matter of Sullivan*, 169 Misc. 16, 17; affd., 255 App. Div. 1008; *Matter of Ebbets*, 149 Misc. 260, 267; *Matter of Gomez*, 160 id. 503, 506; *Matter of May*, 172 id. 137, 140.) In this representative capacity he is seeking merely to perform the primary obligation imposed upon him by law of reducing to his official possession the assets belonging to this estate.

The effect of the answer, in general, is merely to launch a collateral attack on the propriety of the appointment of the present administrator *d. b. n.* which, on the facts of the case, is unwarranted. (Surr. Ct. Act, § 42; *Leonard* v. *Columbia Steam Navigation Co.*, 84 N. Y. 48, 55; *O'Connor* v. *Huggins*, 113 id. 511, 516; *Van Gaasbeek* v. *Staples*, 85 App. Div. 271, 274; affd., 177 N. Y. 524.) In addition, the answer raised the right of Scott, as an *individual*, to participate in the distribution of the estate. Strictly speaking,

this also is improper, since, as an individual, he is not a party to the record, and any question respecting distribution cannot arise until the account has been filed and its proper judicial settlement becomes an issue.

Despite these considerations it is, of course, obvious that the question of the personal rights of Scott, as an individual, underlie the entire proceeding. If he possesses no distributive rights his initial appointment as administrator *d. b. n.* was improper (*Matter of Wolff*, 161 App. Div. 255, 262; *Matter of Bunimowitz*, 128 Misc. 518, 520; *Matter of Lawson*, 158 id. 902, 903), and it would be a futile act to compel the removed administrator to account if the ultimate result would be merely to direct the payment to him, in their entirety, of the assets for which the account might demonstrate him to be chargeable. For this reason the parties have elected to litigate the question of Scott's individual status at the present time and all of the proof which has been adduced has been addressed to that issue.

It is contended on behalf of Scott that the proceedings in 1934, in which he applied for a revocation of the letters issued to Everett Gourlay, and which directed the latter to account, has rendered *res adjudicata* his right to participate in the distribution of the estate. Obviously that issue must have been involved in the proceeding, since a compulsory proceeding may not be inaugurated by one not entitled to any share in the assets of the estate. (Surr. Ct. Act, § 259, subd. 1, ¶ a; *Matter of Goldowitz*, 153 Misc. 182, 184, 185; *Matter of Delaney*, 158 id. 458, 460.) It is, however, contended by the surety that Scott, at that time, concealed the fact of his adoption. The contrary is true. The trial was had on October 3, 1934, and an exemplified copy of the adoption record was introduced in evidence and marked "Petitioner's Exhibit 1," and the petitioner testified fully respecting the adoption, as did Mrs. Florence P. Tomlinson, another witness. Under these circumstances it is difficult to perceive why the question of his status as a distributee is not *res adjudicata* at this time. (*Rudd* v. *Cornell*, 171 N. Y. 114, 127, 128; *Matter of Lesser*, 159 Misc. 598, 601; *Reynolds* v. *Ætna Life Ins. Co.*, 160 N. Y. 635, 651; *Matter of Lauderdale*, 150 Misc. 214, 215.)

It is, however, contended on behalf of the surety that even if, as between Scott and Everett Gourlay, the status of the former, as a distributee, is *res adjudicata*, this determination is not binding upon it. No authority even remotely in point is cited to sustain this position. It was duly served in the proceeding and filed a notice of appearance. The fact that it was not actively represented on the hearing was the result of its own election. If, as is asserted,

a notice of the second hearing should have been served upon it and was not, of which there is no proof, it was at most an irregularity of which it was promptly advised by the service upon it of the proposed decree, the bill of costs and the decree itself. Failure to act under such circumstances must be deemed to amount to gross laches.

In any event, it is at least arguable that the judgment then entered, since it was binding against its principal, would have been conclusive against the surety even if it had not been made a party to the proceeding in the first instance. (*Casoni* v. *Jerome*, 58 N. Y. 315, 321; *Harrison* v. *Clark*, 87 id. 572, 576.)

Despite its distinct impression that the issue respecting Scott's right to share in the estate of his natural grandfather is now *res adjudicata*, the court prefers to examine the question *de novo* on its merits.

It has been conceded on the trial and in the briefs of the parties that under New Jersey law, in which State the adoption was consummated, Scott's rights to intestate inheritance from his natural relatives were not terminated by the adoption. The issue has, however, been tried on the assumption that, since the question concerns the devolution of New York assets, the laws of this State must control, and this appears to have been settled by ultimate authority. (*Matter of Leask*, 197 N. Y. 193, 196.) The question is thereupon directly posed as to whether, under the laws of this State, an adopted person may inherit in intestacy from his natural relatives other than his natural parents. That he may inherit from the latter is conclusively demonstrated by the second sentence of section 115 of the Domestic Relations Law, which reads: " The rights of a foster child to inheritance and succession from his natural parents remain unaffected by adoption."

In addressing themselves to this narrow single issue the parties have felt impelled to file memoranda exceeding 100 pages in length, despite the implied admonition to the contrary contained in Matthew 6:7, which has received innumerable modern repetitions.

So far as the diligence of counsel and the independent research of the court have disclosed, there are only two decisions of courts of the State of New York in which the issue respecting the mutual rights of inheritance of natural relatives, following an adoption, has been passed upon. The first is *Matter of Landers* (100 Misc. 635), decided by former Surrogate SEXTON of Oneida county in 1917, in which the issue concerned the right of an adopted child to participate in the intestate distribution of the estate of her natural brother, and the second, *Matter of Monroe* (132 Misc. 279), by the late Surrogate SLATER of Westchester county, which affirmed

the right of a child to take by representation under section 29 of the Decedent Estate Law, under the will of a natural sister of her mother who had been adopted prior to her mother's death.

The gist of Surrogate SEXTON's opinion is so lucidly expressed that attempted paraphrase would incur the risk of perversion. He says (at p. 640): "The right of inheritance is a subject exclusively under the control of the State Legislature, and it has the right, and may give heritable blood when nature did not. Very likely, because of the change of parents by adoption, the Legislature, that no privileges might be lost to the child, or legal rights formerly possessed, provided that the rights of inheritance and succession from his natural parents should remain unchanged as a result of adoption proceedings. To the other kindred of the adopted child, no reference is made because there is no altered relation created by statute. Brothers and sisters of the natural blood, whether adopted into other families or not, continue to be brothers and sisters, and it seemingly was not the intention of the Legislature by the law of adoption to modify the blood or legal relation existing among kindred, except as modified by enactments describing the new relations of the natural parents and the adopting parents. This being so, it will not be presumed that the Legislature, without having spoken upon the subject, intended to take from a sister the right of inheritance which she possessed before the law of adoption was written into the statutes of our State.

"The natural parents cannot inherit from the adopted child, but the adopted child continues to inherit from the natural parents; then why not from natural brothers and sisters and from other kindred. There has been thrown around an adopted child by statutory enactment a new relation, and an opportunity for additional inheritance without depriving the child of any inheritances that he would have been entitled to, provided no adoption had taken place. This idea is only a perpetuation of the law in vogue among the Romans * * *."

Surrogate SLATER's statement (*Matter of Monroe*, 132 Misc. 279, 281), whereas terse, is equally unequivocal. In referring to the provision of the statute of adoption relating to inheritance by foster parents from the adopted child, he says: "Thus a rule of law is made for the flow of property *from* the adopted child. The child's right of inheritance *from* the natural parent remains unaffected by such adoption. It is so declared in the law. The right of inheritance *from* the natural kindred is unchanged. * * * there is nothing in the adoption law that dissolves the natural relationship of the kindred. Consequently, the natural sister or brother is still such. No such rights have been uprooted and destroyed." (Italics in original.)

The well-recognized nature of the principles enunciated by these decisions is further emphasized by the dictum of Surrogate FEELEY in *Matter of Heye* (149 Misc. 890, 894; affd., 241 App. Div. 907): " The adoption does not take from the child the right to inherit from its natural kindred."

In opposition to these clear-cut adjudications the memorandum of the surety has submitted a long series of excerpts from opinions upon the question of the right of the adopted child to inherit *from his foster parents and their kindred*, and, by italicizing, has sought to make them applicable to the entirely diverse situation here present. They are not even dicta in support of its contention. As this court observed in *Matter of Davison* (137 Misc. 852, 858; affd., 236 App. Div. 684): " Perhaps there is no practice contributing more greatly to confusion in legal conception or more fruitful of litigation than that of wresting a line or phrase from its context in an opinion and attempting to apply it to an entirely dissimilar set of facts." The practice has been made the subject of repeated statements of judicial disapproval. (See *e. g.*, *Dougherty* v. *Equitable Life Assur. Soc.*, 266 N. Y. 71, 88; *Gwynne* v. *Bd. of Education*, 259 id. 191, 196; *Matter of Suderov*, 156 Misc. 661, 664, 665; affd., 249 App. Div. 763; affd., 274 N. Y. 525; *Matter of Galloway*, 139 Misc. 183, 184.)

On page 6 of its reply memorandum the surety, in referring to the *Landers* case (*supra*), states that it " was impliedly overruled by *Bourne* v. *Dorney* (184 App. Div. 476; affd., 227 N. Y. 641), which necessarily determined that the former relation of grandfather and granddaughter had been abrogated by her adoption." The sole question involved and adjudicated in the decision to which reference is made is that an adopted child bears the same relationship to its foster father as is sustained by a natural child, with the result that an adoption subsequent to the making of a will by the father will effect its *pro tanto* revocation pursuant to section 26 of the Decedent Estate Law in precisely the same manner as if it had been born to him. The decision does not either directly or by any implication whatsoever deal with any relationship or consequent rights other than those of a foster parent and adopted child *inter sese*.

As was pointed out in *Matter of Marsh* (143 Misc. 609, 611), the subject of adoption has been a matter of evolution in the State of New York. From the enactment of the first general statute on the subject in 1873 until 1888 personal relations only, and these solely between the adopted child and the foster parents, were effected. All rights of inheritance remained unaltered. In the latter year the foster child was *given* rights of inheritance from the

foster parents. The language of the statute *deprived* it of nothing which it previously had possessed. The same applies to the revision of 1896 and to the amendments down to and including that of 1938. Unquestionably a natural child possessed rights of inheritance prior to 1873. They were equally undoubted under the statute then enacted. The surety has failed to indicate any definite point of time when he was deprived of these rights.

From its inception adoption statutes in this State have stressed the personal relationship between the natural parent and child on the one hand and the foster parent and adopted child on the other. No intimation has ever been made of any alteration in the relationship of the child who was adopted to any other of his natural relatives. They have no more voice respecting his adoption than he, himself, has in exceeding ninety-nine per cent of the situations in which the new relationship of parent and child is involved.

The personal relationship between the natural parents and the child is altered, but even here the Legislature has been careful to specify that no rights of inheritance of the child from his natural parents shall be impaired. It would seem to be an *a fortiori* conclusion that where no alteration of personal relations has been effected, as is the fact respecting those between an adopted child and his natural kindred, other than his parents, no legislative intent to abrogate his rights of inheritance could be imputed.

In any event, the rule of law has thus been enunciated without contradiction or diverse intimation since 1917, and even were the court to entertain a diverse opinion, which it most emphatically does not, it would feel itself bound to adhere thereto by application of the doctrine of *stare decisis*. (*Matter of Cruikshank*, 169 Misc. 514, 515.)

The court accordingly expressly reaffirms the result attained by it in 1934 that Lester T. Scott, the natural grandson of this decedent, is entitled to share in the distribution of his estate pursuant to the provisions of subdivisions 1 and 9 of section 83 of the Decedent Estate Law.

Proceed in conformity herewith.