■ In the Matter of the Estate of WARNER D. ORVIS, Deceased. CLAY H. ORVIS, Appellant; EDWIN J. FITZPATRICK, Respondent.—

No opinion. Christ, P. J., Rabin, Munder and Brennan, JJ., concur; Hopkins, J., dissents and votes to reverse the decree and to sustain petitioner's claim to the extent of one-sixth of the decedent's estate, with the following memorandum: The question to be decided is the proper construction of a separation agreement. Petitioner is the

son of the decedent. His mother was divorced from the decedent on August 7, 1936. The separation agreement made on May 24, 1936 survived the divorce. By its terms, the decedent promised to leave, by will, at least one half of his estate in trust, the income therefrom to be paid to the mother "during her natural life or until her remarriage", with the principal then to go in equal shares to petitioner and the latter's sister. The agreement also provided that it terminated on the death or remarriage of the mother. The mother died in 1965. The decedent died in 1967, leaving a will without any provision for petitioner. During their lifetime the decedent and the mother amended the separation agreement on four occasions, upon the last of which (on Dec. 28, 1955) the provision for the disposition of the principal of the trust to be erected in the decedent's will was modified so that but one third of the principal was to be paid to petitioner, with the privilege granted to the decedent to leave petitioner's share either wholly or partly in trust, the income therefrom to be paid to petitioner during his life. Petitioner filed a claim against the estate, in which he applied for payment of one fourth of the estate, as the separation agreement originally provided. The Surrogate disallowed the claim, finding that the mother's death in the lifetime of the decedent extinguished petitioner's rights. As I view the case, petitioner was a donee beneficiary of the agreement (2 Williston, Contracts [3d ed.], §§ 356, 370; cf. *Rich* v. *Mottek,* 11 N Y 2d 90; *Forman* v. *Forman,* 17 N Y 2d 274; *Matter of Granwell,* 20 N Y 2d 91). The failure of the decedent to carry out his promise created a liability against his estate. The estate does not so much defend on the ground that the agreement did not impose an obligation on the decedent for the benefit of petitioner as it does contend that the obligation expired on the mother's death. The estate summons strength for this position from the clause of the agreement which provided that it terminated on the death or remarriage of the mother; hence, it argues, her death before that of the decedent erased his obligation to make a will conforming to the agreement. I cannot read that intent into the agreement and, indeed, I find an intent that the obligation continued after the mother's death. First, it seems an unavoidable inference from the agreement that the parties anticipated a divorce would follow, as it did; and the inference seems equally clear that a remarriage of one or both of the parties was within their contemplation, as actually happened in the case of the decedent. The clause for the testamentary provision was certainly to safeguard both the interests of the mother and the children of the marriage in the event of the remarriage of the decedent. Thus, the intent of the clause must have been directed beyond the death of the decedent and the death of the mother. Second, to read the agreement in the sense urged by the estate leads to a contradiction. If, as the agreement states, the trust principal is payable to the children on the remarriage of the mother, and she does in fact remarry, on the argument of the estate there is no obligation then in existence, because the agreement provides that it comes to an end at her remarriage, even though she survived the decedent. Yet, that reading would destroy all meaning to the testamentary benefit which the agreement imposed. Third, the estate's argument ignores the fact that support payments were undertaken by the decedent to be made to the mother during her lifetime and that, as to those payments, the agreement would of course come to an end on her death — a result which the termination clause contemplated. But the termination clause could not logically contemplate that support for the children would cease during their infancy because the mother had died. Thus, the clause cannot be narrowly construed to put all obligations under the agreement to rest merely because the mother's death occurred before the decedent died. However, I do not believe that petitioner can enforce the agreement as originally written. The amendments of the agreement by the parties changed the content of the obligation to peti-

540

tioner; petitioner had only such rights as the parties gave him by the agreement and he shows no alteration of his position or prejudice by any action taken by him in reliance on the original agreement communicated to the parties. As a donee beneficiary he takes his rights from the parties as they finally agree, in the absence of some countervailing equity of predominant significance (*Salesky* v. *Hat Corp. of Amer.*, 20 A D 2d 114; *Lehman* v. *Stout*, 261 Minn. 384). For these reasons I would reverse the decree, but limit petitioner's recovery to his right under the last modification of the parties; and, as the decedent did not invoke his privilege to create a trust, I would direct that petitioner receive one third of the one half of the estate which the modification obligated the decedent to leave — that is, one sixth of the estate.