OPINION OF THE COURT
Millard L. Midonick, J.
In the pending probate proceeding, the decedent’s widow has sought to revoke the preliminary letters testamentary issued to the decedent’s sisters, the nominated executrices under the will, and to disqualify the sisters from appointment as executrices. The sisters have questioned the status of the widow and have sought a construction of the decedent’s will. The widow has cross-moved for summary judgment and for an accounting. The parties are also disputing the ownership of the contents of the decedent’s safe deposit box. A hearing was held with respect to the issues of the widow’s status and the ownership of the safe deposit box contents.
The decedent, Joseph A. Ragone, died on May 20, 1980, at 80 years of age. He left a will, dated January 19, 1973, which has been offered for probate. The decedent’s will provides a bequest to his wife, Josephine Ragone, of “all my furniture, furnishings, automobiles and all my other household goods and effects.” The will then gives a $2,500 legacy to the decedent’s brother, Vincent Ragone, and gives all of the decedent’s “jewelry and articles of personal adornment”, in equal shares, to the decedent’s sisters, Antionette Viscardi and Camille Ragone. The will then provides as follows:
“sixth: I give and bequeath to my wife, Josephine ragone, if she survives me, such part of my estate as my wife would have received had I died intestate domiciled in the *995 State of New York. In the event that my wife, Josephine ragone, shall die with me in a common accident or disaster, or under such circumstances as to make it impossible or difficult to determine which of us died first, or within sixty (60) days after my death, I direct that my wife shall be conclusively deemed not to have survived me.
“seventh: In the event that my wife, Josephine ragone, shall predecease me, or shall be deemed not to have survived me in accordance with the provisions of paragraph ‘sixth’, all property, of all kinds, wherever situated, belonging to me at the time of my death, shall pass in accordance with the provisions of paragraph ‘eighth’.
“eighth: All the rest, residue and remainder of the property which I own at my death I devise and bequeath to my sisters, antionette viscardi and camille ragone, or the survivor. If neither of said sisters of mine shall survive me, I devise and bequeath my residuary estate to my brother, Vincent ragone.”
The decedent’s two sisters are named as executrices under article ninth of the will.
The proof adduced at the hearing established the following facts concerning the status of Josephine Ragone who claims to be the decedent’s widow. The decedent married Josephine on September 10, 1963 in Greenwich, Connecticut, and a valid marriage certificate is in evidence. The decedent and Josephine lived together as husband and wife continuously from the date of their marriage until the decedent’s death in 1980. The decedent had been married twice before. The second marriage ended with the death of the wife in 1960. The first marriage terminated by divorce decree dated January 18, 1943 issued by the Supreme Court, County and State of New York, which provided that: “Defendant [the husband-our decedent] is forbidden to marry any person other than plaintiff [the first wife] during the life time of the plaintiff except by express permission of the court.” There is no evidence of any such permission having been obtained by decedent at any time with respect to his later second or third marriages. The decedent had a son with his first wife who lived with the first wife, his mother, after the divorce, and who was *996 adopted by his stepfather in 1959 when the son was an adult.
The decedent’s sisters contend that Josephine is statutorily excluded from the definition of “spouse” under EPTL 5-1.2 (subd [a], par [2]) in that her marriage to decedent was a “prohibited” remarriage under section 8 of the Domestic Relations Law in effect at the time of the marriage in 1963. Section 8 of the Domestic Relations Law was amended in 1968 (L 1968, ch 584) to permit remarriages without court permission. Nevertheless, the court need not consider the effect of the statute, since it is clear to the court that the marriage took place in Connecticut. The marriage certificate clearly establishes that fact. The courts have held that the prohibition in a decree of divorce such as the one quoted above was penal in character and had no extraterritorial effect (Fisher v Fisher, 250 NY 313; Thorp v Thorp, 90 NY 602; Beaudoin v Beaudoin, 270 App Div 631; Matter of Sokoloff, 166 Misc 403).
The testimony and all of the documentary evidence clearly prove that Josephine Ragone is the surviving spouse of the decedent herein. The decedent’s sister testified that she attended the wedding reception of the decedent and Josephine. The Social Security Administration has recognized Josephine as decedent’s wife, as has the insurance company which insured the decedent’s life. The decedent and Josephine filed joint income tax returns as well. It is clear that the decedent and Josephine resided together and held themselves out as husband and wife continuously for 17 years since their marriage in 1963 until the decedent died in 1980. Accordingly, the motion to strike the appearance and objections of Josephine Ragone in the probate proceeding is denied in all respects.
The construction question presented by the decedent’s will concerns the meaning of article sixth thereof which is quoted in full hereinabove, in which the decedent states, in part, that: “I give and bequeath to my wife, Josephine ragone, if she survives me, such part of my estate as my wife would have received had I died intestate domiciled in the State of New York.” The sisters argue that the decedent intended to give his wife an elective share, or, in the alternative, that the share of Josephine Ragone should be *997 determined as in the case of a decedent survived by a spouse and a child, and without regard to the 1959 adoption of the decedent’s son by his stepfather.
The sisters assert that parol evidence as to the decedent’s intent should be admissible. Aside from the fact that the recollection and notes of the attorney-draftsman do not shed light on the decedent’s intent, the language of the will does not permit resort to extrinsic evidence (Matter of Dearstine, 26 AD2d 736; Matter of Lewin, 51 Misc 2d 141, affd 27 AD2d 971; Matter of Scheubel, 43 Misc 2d 674; Ann., 36 ALR2d 147, 150). In Matter of Dearstine (supra, p 736), the decedent-husband gave his wife certain real property and cash and “ 'in addition such a portion of my estate which will in the aggregate equal the amount in property or cash which my wife would have been entitled to receive, had I died intestate. It being my intention that my said wife shall receive no more and no less than the proportion of my estate which the laws of the State of New York compel me to give, devise and bequeath unto her as my surviving spouse.’ ” The Appellate Division, Third Department, stated (26 AD2d 736, supra): “We disagree with the Surrogate’s determination that it was testator’s intention to give to his widow one third of his estate — the share she would have been entitled to had she elected to take against the will under section 18 of the Decedent Estate Law in effect at the time of his death. The will clearly gives one half of the estate to the widow by providing in clear and unambiguous language: 'I give * * * the amount in property or cash which my wife would have been entitled to receive, had I died intestate’ as section 83 of the Decedent Estate Law, in effect at the time of the testator’s death * * * provided that one half of the net estate before taxes should pass to a widow where there was one child; and the will affords no basis for implying an election, which is a voluntary and personal act.”
A similar determination was made by Surrogate Bennett in Matter of Scheubel (supra, p 674) where the will provided: “ ‘I give and bequeath to my wife * * * from whom I am now and have been living separate and apart pursuant to a judgment of separation, such part of my estate as she shall be entitled to have by virtue of the law of the *998 State of New York.’ ” The residuary estate was given to a friend of the decedent. The Surrogate found (43 Misc 2d 674, 675; supra): “[T]he court is of the opinion that the language of the will does not permit resort to extrinsic evidence (36 ALR 2d 147, 150). There are no words or expressions used by the testator in this will susceptible of an intention to restrict the share of the spouse to the minimum required by law. Moreover, testamentary provisions in favor of a surviving spouse should be liberally construed (Moffett v. Elmendorf, 152 N. Y. 475; Matter of Moss, 230 App. Div. 741). Accordingly the widow is held to be entitled to a bequest measured by the laws of intestacy, or one half of the net estate.”
The sisters rely on the case of Matter of Taitt (87 Misc 2d 586) which is distinguishable from the case before us as well as the cases discussed above, and therefore not authority for permitting extrinsic evidence to be considered in connection with the decedent’s intent. In Taitt (p 587) paragraph second of the will provided as follows: “ Tn the event that at the time of my death, my wife, Urlah Taitt, whose present whereabouts are unknown to me, and I have not been divorced, then, and in that event, it is my wish and will that she be not permitted to share in my estate to any greater extent than she would have shared, had I died intestate.’ ” In this case, the intestate share amounted to the entire estate. The Surrogate in Taitt also considered other provisions of the will which provided bequests for other named individuals, and were thus inconsistent with a disposition of the entire estate to the widow. He deemed (p 588) paragraph second quoted above as being in “inartful language” and not dispositive of the issue presented. Therefore, the court found an ambiguity in the Taitt will. It is clear that where there is an ambiguity, extrinsic evidence as to background facts and circumstances may be admitted to ascertain the true intent of the testator. In the case at bar there is no ambiguity and therefore extrinsic evidence cannot be admitted. Accordingly, any evidence as to the decedent’s lack of knowledge of his son’s adoption is irrelevant and inadmissible.
The court finds no ambiguity in the will before it even though article eighth of the will provides for a residuary *999 bequest to the decedent’s sisters. The residuary of course would apply in the event that the widow was found to be disqualified to take any intestate share of his estate, which event has not occurred; indeed there has been no proof offered as to any ground for disqualification under EPTL 5-1.2. Article seventh of the will makes it clear that the residuary bequest would only apply if Josephine predeceased the decedent or died in a common disaster with him or did not survive him for 60 days. Accordingly, the residuary clause does not raise any ambiguity and is easily understood under the construction found by the court.
In consideration of the above cases and upon reflection with respect to the language of the decedent’s will as a whole, the court determines that Josephine, the widow herein, is entitled to receive a full intestate share of this estate, and not only an elective share thereof.
The court must further consider whether the intestate share is to be determined as if the decedent were survived by a widow and a son or whether the adoption of the son by his stepfather eliminated him as a distributee of the decedent.
The decedent’s son was adopted in 1959, when he was an adult, by his stepfather, who was the husband of his mother, the decedent’s first wife. The sealed records of the Surrogate’s Court of Bronx County so indicate for purposes of this finding. It is clear to the court that the law in effect at the decedent’s death determines who his distributees are. (Matter of DeRosa, NYLJ, Feb. 16, 1977, p 13, col 4; Matter of Weinberg, NYLJ, July 29, 1976, p 10, col 6; Matter of Greenspan, NYLJ, Nov. 4, 1968, p 18, col 8.) Effective March 1, 1964 with respect to estates of persons dying thereafter, subdivision 1 of section 117 of the Domestic Relations Law provides that the right of an adoptive child to inherit in intestacy from and through his natural parents “shall terminate upon the making of the order of adoption”. The intention of the Legislature to make the amendment applicable even though the adoption had taken place prior to March 1, 1964 is clearly expressed in the Bennett Commission reports and in the note attached to the bill. The Legislature has the right at all times to change the lines of inheritance. (Gilliam v Guaranty Trust *1000 Co. of N. Y., 186 NY 127.) Pursuant to section 117 of the Domestic Relations Law and the foregoing cases, the rights of the decedent’s son to inherit from the decedent, his natural father, terminated upon the making of an order of adoption in 1959.
Accordingly, the decedent’s widow was his sole distributee on his death and entitled to the entire estate, after payment of the preresiduary legacies and bequests of personal property provided for in articles third, fourth and fifth of the decedent’s will.
The next issue to be determined by the court concerns the ownership of the contents of the decedent’s safe deposit box which consisted of travelers checks and cash totaling approximately $10,000 and items of both feminine and masculine jewelry as set forth in an inventory prepared by the State Tax Commission.
The widow has failed to prove that any of the travelers checks or cash belonged to her. Nevertheless, the travelers checks and cash will be part of the decedent’s estate and pass to the widow in accordance with the construction of the will discussed herein-above.
The will provides in article fifth as follows: “I bequeath to my sisters, antionette viscardi and camille ragone, all of my jewelry and articles of personal adornment owned by me at my death, equally, share and share alike.” The widow has testified that she is not claiming any of the items of masculine jewelry but asserts that the decedent intended, by the phrase “jewelry and articles of personal adornment” to bequeath only the jewelry he wore, not the feminine jewelry also found in the safe deposit box. The items of feminine jewelry appear to have also been owned by the decedent alone and not by his widow for the following reasons. The decedent received substantial items of feminine jewelry from his second wife’s estate and receipts and releases executed by him.in connection with that estate have been presented to the court. These items of jewelry were kept by the decedent in his safe deposit box and he was the only individual with authority to enter the box. His widow maintained her own separate safe deposit box and had no right to enter the decedent’s safe deposit *1001 box. Moreover, the widow has failed to prove that the decedent at any time made any gift to her of any of the items of feminine jewelry contained in the safe deposit box. Indeed, one of the items of feminine jewelry which was purchased by the decedent at an auction and not received from his second wife’s estate was an engagement ring which he never delivered to his wife Josephine but instead retained in the safe deposit box. Josephine has not proven an effective gift of the ring to her. There is no competent proof of delivery of any of the items of jewelry to the widow, and such is an essential element of proof of gift. (Matter of Szabo, 10 NY2d 94, 98.) Accordingly, the court determines that all of the jewelry located in decedent’s safe deposit box belonged to the decedent at death and passes pursuant to article fifth of his will to his sisters.
The preliminary executrices, the decedent’s sisters, are currently serving pursuant to the order of the court and they have posted a substantial bond in an amount fixed by the court to cover the full value of the decedent’s assets which consist mainly of real property. The widow has moved to disqualify the sisters from acting as executrices and has sought to revoke their preliminary letters and the widow also seeks an accounting from them. The court determines that all of these issues raised by the widow should properly be determined in an accounting proceeding by the preliminary executrices. Accordingly, the preliminary executrices are directed to account within 30 days from service upon them of an order to account. The will shall be admitted to probate, it having been proved to the court’s satisfaction, but the appointment of fiduciaries to act under full letters shall await the accounting proceeding as shall all other issues raised by the widow with respect to removal and/or surcharge of the preliminary executrices.
The parties are directed to submit a decree on notice admitting the will to probate and construing the will in accordance with the foregoing decision and are further directed to submit an order to account on notice in accordance with the foregoing decision. The preliminary executrices shall continue to make monthly payments of $2,000 to the widow as provided in a former order of this court until further order of the court. The preliminary execu *1002 trices are urged to consider making distribution of the assets of this estate to the widow as soon as may be practicable or pursuant to an order with respect to the distribution upon proper motion.