In the Matter of the Estate of JOSEPH A. RAGONE, Deceased. ANTOINETTE VISCARDI et al., Appellants, JOSEPHINE RAGONE, Respondent.

First Department, June 29, 1982

APPEARANCES OF COUNSEL

*Merritt T. Viscardi* for appellants.

*Hyman L. Rutman* for respondent.

*Stuart A. Summit* of counsel (*Guy R. Fairstein* with him on the brief; *Burns Jackson Summit Rovins Spitzer & Feldesman,* attorneys), for Bertha K. Donson, *amicus curiae.*

**OPINION OF THE COURT**

SILVERMAN, J.

This is an appeal from a decree of the Surrogate's Court, New York County, dated September 25, 1981, determining that respondent widow Josephine Ragone is the sole distributee of the testator Joseph A. Ragone, and is entitled to his entire estate after payment of the preresiduary legacies and bequests of personal property provided for in the will.

The issue is one of construction of the will: whether the widow shall receive the entire estate after preresiduary legacies and bequests of personal property, or whether she should receive only her elective share in the estate under EPTL 5-1.1 (subd [a], par [1], cl [A]), or perhaps her intestate share under EPTL 4-1.1 (subd [a], par [2]) as if the decedent had died intestate survived by his widow and a son, with the residuary going to decedent's two sisters under the residuary clause in the will.

Testator was married three times. His first marriage ended in divorce but he had a son Gerard by that marriage. His second marriage ended on the death of his second wife. His third marriage — on September 10, 1963 — was to Josephine who survived him. After divorce from his first wife, that wife remarried, to Emanuel Dans. The son took the name Peter Dans. Emanuel Dans sought to adopt testator's son while that son was still a minor; testator's consent was necessary for such an adoption and testator refused such a consent, and, accordingly, the adoption did not take place. After the son reached his majority, testator's consent was no longer necessary for adoption by the son's stepfather (Domestic Relations Law, § 111, subd 4), nor indeed, was testator necessarily entitled to any notice of any petition for adoption (Domestic Relations Law, § 111, subd 3; § 115, subd 8). The son, having reached his majority, petitioned for adoption by his stepfather and was so adopted on October 27, 1959.

Testator's will dated January 19, 1973 provided as follows:

"THIRD: I give and bequeath to my wife, JOSEPHINE RAGONE, if she survives me, all my furniture, furnishings, automobiles and all my other household goods and effects. If my wife does not survive me, I give and bequeath all my furniture, furnishings, automobiles and all my other household goods and effects to my sisters, ANTOINETTE VISCARDI and CAMILLE RAGONE, or the survivor.

"FOURTH: I give and bequeath to my brother, VINCENT RAGONE, the sum of TWO THOUSAND FIVE HUNDRED ($2,500.00) DOLLARS, without reduction or abatement for estate or inheritance taxes, which shall be paid out of my residuary estate as an expense of administration.

"FIFTH: I bequeath to my sisters, ANTOINETTE VISCARDI and CAMILLE RAGONE, all of my jewelry and articles of personal adornment owned by me at my death, equally, share and share alike.

"SIXTH: I give and bequeath to my wife, JOSEPHINE RAGONE, if she survives me, such part of my estate as my wife would have received had I died intestate domiciled in the State of New York. In the event that my wife, JOSEPHINE RAGONE, shall die with me in a common accident or disaster, or under such circumstances as to make it impossible or difficult to determine which of us died first, or within sixty (60) days after my death, I direct that my wife shall be conclusively deemed not to have survived me.

"SEVENTH: In the event that my wife, JOSEPHINE RAGONE, shall predecease me, or shall be deemed not to have survived me in accordance with the provisions of paragraph 'Sixth', all property, of all kinds, wherever situated, belonging to me at the time of my death, shall pass in accordance with the provisions of paragraph 'Eighth'.

"EIGHTH: All the rest, residue and remainder of the property which I own at my death I devise and bequeath to my sisters, ANTOINETTE VISCARDI and CAMILLE RAGONE, or the survivor. If neither of said sisters of mine shall survive me, I devise and bequeath my residuary estate to my brother, VINCENT RAGONE.

"NINTH: I hereby nominate and appoint ANTOINETTE VISCARDI and CAMILLE RAGONE, my sisters, to be the Executrixes under this my Last Will and Testament. If either of them do not survive me, or the office of Executrix is or becomes vacant for any reason, then I direct that the survivor of them shall be the Executrix of this my Last Will and Testament. If both ANTOINETTE VISCARDI and CAMILLE RAGONE do not survive me, or can not serve for any reason as my Executrix, then I nominate and appoint my brother VINCENT RAGONE to be the Executor of this my Last Will and Testament."

The Surrogate held that by reason of the son's adoption, the son ceased to be a distributee of testator's estate (Domestic Relations Law, § 117), and the widow was thus the sole distributee, who would be entitled on intestacy to

100% of the estate. Therefore, the Surrogate held that under paragraph SIXTH of the will, the widow was entitled to the entire estate after the preresiduary legacies and bequests, leaving nothing for the residuary. I do not agree.

While a literal reading of paragraph SIXTH of the will alone might justify the result reached by the Surrogate, I think a fair reading of the will, either alone or in the light of extrinsic circumstances, indicates that the Surrogate's construction — that the widow shall get 100% of the estate (with minor exceptions) — contravenes the testator's intent discernable from the will.

In *Matter of Fabbri* (2 NY2d 236, 239-240, 244) the Court of Appeals thus stated the applicable principles in the construction of wills:

"The prime consideration here as in all construction proceedings is the intention of the testator as expressed in the will. All rules of interpretation are subordinated to the requirement that the actual purpose of the testator be sought and effectuated as far as is consonant with principles of law and public policy.

"This intent, as we have often said, must be gleaned not from a single word or phrase but from a sympathetic reading of the will as an entirety and in view of all the facts and circumstances under which the provisions of the will were framed * * *

"As this court recently stated in *Spencer* v. *Childs* (1 N Y 2d 103, 106-107) which also involved a problem of construction: 'Cases such as the present and *Matter of Daly* [1 N Y 2d 100] — also decided today * * * — well illustrate the aptness of Judge LEARNED HAND's wise and trenchant observation that courts should be wary of making "a fortress out of the dictionary", since there "is no more likely way to misapprehend the meaning of language * * * than to read the words literally, forgetting the object which the document as a whole" seeks to achieve. (*Cabell* v. *Markham,* 148 F. 2d 737, 739; *Central Hanover Bank & Trust Co.* v. *Commissioner,* 159 F. 2d 167, 169.) "A word * * * may vary greatly in color and content" according to the intent of its author and the circumstances under which it is used. (*Towne* v. *Eisner,* 245 U. S. 418, 425.)'

"If the court upon reading the will in this setting discerns a dominant purpose or plan of distribution, the individual parts of the will must be read in relation to that purpose and given effect accordingly (*Roe* v. *Vingut,* 117 N. Y. 204, 212). This is true despite the fact that a literal reading of the portion under construction might yield an inconsistent or contradictory meaning because of the use of awkward language inadvertently or carelessly chosen (*Haug* v. *Schumacher,* 166 N. Y. 506, 513; *Williams* v. *Jones,* 166 N. Y. 522, 533 * * *). As this court pointed out in an early opinion: 'If we can see that the inapt, or careless, use of language by the testator has created the difficulty in ascertaining his intention, but, nevertheless, feel certain as to what he meant, from reading the whole instrument in connection with the clause in question, we may subordinate the language to that meaning.' (*Matter of Miner,* 146 N. Y. 121, 130-131.) * * *

"This approach has its limits. There are cases where the language employed is so clear and unmistakable as to convey only one meaning even when read in its proper setting."

Applying these principles, with a "sympathetic reading of the will as an entirety and in view of all the facts and circumstances under which the provisions of the will were framed", I think it is clear that the testator did not intend that his widow should receive 100%, even 100% after the small preresiduary legacies and bequests, but, that on the contrary, the testator's "dominant purpose or plan of distribution" and his clear intention was that after the small legacies and bequests, the estate should be divided substantially between his widow and his sisters.

If one reads the will with no knowledge of any extrinsic facts, from the face of the will alone one derives the clear impression that the testator was substantially dividing his estate between his widow and his sisters and that he did not intend to leave his widow 100% of his estate, and that he did not think that in fact he was doing so.

This impression is reinforced by examination of particular provisions of the will:

(a) Paragraph SIXTH of the will, which is relied on as giving the widow 100% of the estate, gives her "such *part*

of my estate" as she would have received had the testator died intestate. (Emphasis supplied.)

(b) If the widow's intestate's share is 100%, and literally that is what she is to get under paragraph SIXTH of the will, how account for the preresiduary gifts which clearly do not go to the widow? 100% is 100%. If the brother is to receive $2,500 pursuant to paragraph FOURTH of the will and the sisters all the testator's jewelry, then paragraph SIXTH cannot be carried out literally if paragraph SIXTH means she is to receive 100% of the estate. (See, however, [d] below.)

(c) Paragraph SEVENTH of the will provides for the case in which the widow shall predecease the testator and directs that in that situation, all property of the testator shall pass in accordance with the provisions of paragraph EIGHTH, the residuary clause. It is argued that this means that the residuary bequest has no effect except in the event the widow should predecease the testator, i.e., that the residuary bequest is only an alternative bequest. This is not the natural reading of paragraph SEVENTH, nor is it consistent with the style or plan of the will. Each dispositive paragraph of the will gives a portion of the estate in the first instance to a presumptive or primary beneficiary if that person survives, and only later is that gift defeated and disposed of otherwise if the presumptive beneficiary of that gift does not survive. Thus paragraph THIRD of the will gives furniture, etc., *to my wife * * * if she survives me* (emphasis supplied). "If my wife does not survive me," the furniture is given to the sisters. Paragraph FOURTH of the will gives $2,500 *to the brother*. Paragraph FIFTH gives jewelry *to the sisters*. Paragraph SIXTH gives "such part of my estate as my wife would have received had I died intestate" *to his wife*. "In the event that my wife * * * shall die with me in a common accident or disaster * * * [she] shall be conclusively deemed not to have survived me." Paragraph EIGHTH gives all the rest, residue and remainder of the estate to *"my sisters * * * or the survivor.* If neither of said sisters of mine shall survive me," the residuary is bequeathed to testator's brother Vincent. (Emphasis supplied.)

(d) If the testator had intended paragraphs SIXTH, SEVENTH and EIGHTH to refer in all cases to the same property or share of the estate, one would expect the same language to be used in all three places to describe that same property. Instead, paragraph SIXTH refers to "such part of my estate as my wife would have received had I died intestate"; paragraph SEVENTH to "all property, of all kinds"; paragraph EIGHTH to "[a]ll the rest, residue and remainder". But these three different descriptions make sense in the interpretation I suggest, i.e., if both the wife and the sisters survive, the wife will get the intestate part of the estate (SIXTH), and the sisters will get the rest, residue and remainder (EIGHTH) (which will in that case be only a part of the estate); but if the wife does not survive him, then "all property, of all kinds" (SEVENTH) shall pass under the residuary clause. (Again testator seems to have ignored the small legacies of paragraph FOURTH.)

(e) In the vast majority of cases, the testator names as his residuary legatees the persons who are expected to be his primary beneficiaries and the recipients of the lion's share of the estate. Here we are asked to believe that the testator intended that the residuary legatees, the sisters, are to receive nothing in the most likely contingency, i.e., if his wife survived him.

(f) The executorship clause, paragraph NINTH of the will, reinforces my reading. It is quite frequent, when a testator does not name a professional advisor or a bank as executor, for the testator to name as executor the residuary legatee who is usually the chief beneficiary of the estate. That is what the testator did in this case. The residuary legatees are the sisters or the survivor of them, and if neither survives, then the brother. The executors are the sisters, or the survivor of them, and if both do not survive or cannot serve, then the brother.

It is thus clear from a mere reading of the will that whatever the testator intended, he did not intend that the widow receive 100% of the estate, or even 100% after the small preresiduary gifts. He intended the widow to receive a share of the estate, and the balance, the residuary, to go to his sisters.

The extrinsic circumstances reinforce the construction that I have reached. We do not know whether the testator even knew that his son had been adopted by the stepfather. The statute did not require any notice to him. (Domestic Relations Law, § 111, subd 3; § 115, subd 8.) Certainly we do not know whether he realized that such adoption increased the widow's intestate share to 100%. His lawyers who drew the will apparently were equally unaware of these circumstances.

Testator had drawn two earlier wills: the first will drawn before the son was adopted, the second after the son's adoption by his stepfather. In each of the earlier wills he gave the life income of a trust equal to the intestate share or elective share to *his widow* and gave the residuary to blood relatives (his parents in the first will, his sisters in the second). The first will gave to the widow $2,500 outright plus the income of a trust for the balance of her intestate share; the second will gave the present widow $2,500 plus the income of a trust equal to the elective share she would be entitled to under section 18 of the Decedent Estate Law — both of those being the minimum provision that a husband could make by will and still defeat the widow's right of election (Decedent Estate Law, § 18, subd 1, par [d]). The will that was probated was modeled on those earlier wills, changing the income gifts to outright gifts of principal (as the draftsman's notes indicate); but it seems unlikely that the testator intended to make a radical shift of his testamentary plan.

I note that until 1966 the statute defined the surviving spouse's elective share in terms of her intestate share, with a limit thereon. See L 1929, ch 229, § 4, enacting Decedent Estate Law, § 18, giving a right of election to the surviving spouse, "to take his or her share of the estate as in intestacy, subject to the limitations," etc. Chapter 517 of the Laws of 1966 amended section 18 of the Decedent Estate Law so as to strike out the references to intestate share and refer to elective share. The note to chapter 517 says: "The share 'as in intestacy' as used in section eighteen is dropped in favor of the more accurate term 'elective share'. The amount of that share has not been changed. This is intended to end confusion between the share 'as in intes-

tacy' and the intestate share under section eighty-three (Cf. *Matter of Becker,* 47 Misc.2d 443)."

I note also that without making any provision for him, testator's two earlier wills explicitly refer to his son "Gerard", although by the time of the second will the son's name had been legally changed to Peter Dans. The last will does not refer to the son; perhaps this indicates some awareness by testator of a change in status.

I think the construction that I have reached is that which flows from a "sympathetic reading of the will as an entirety and in view of all the facts and circumstances under which the provisions of the will were framed." (*Matter of Fabbri,* 2 NY2d, at p 240.) Otherwise, we make " 'a fortress out of the dictionary' " (*supra,* p 240) and misapprehend the meaning of the will by reading the words literally, forgetting the object which the document as a whole seeks to achieve. To the extent that a literal reading of paragraph SIXTH of the will might yield a different result, I think we have an example of "awkward language inadvertently or carelessly chosen" (*Matter of Fabbri, supra,* p 240.) This is truly a case in which we can apply the principles quoted in the *Fabbri* case. " 'If we can see that the inapt, or careless, use of language by the testator has created the difficulty in ascertaining his intention, but, nevertheless, feel certain as to what he meant, from reading the whole instrument in connection with the clause in question, we may subordinate the language to that meaning.' (*Matter of Miner,* 146 N. Y. 121, 130-131.)" Otherwise, we "overlook the very real possibility of distortion and lack of conformity between the disposition actually intended and the one indicated by an overly strict and pedantic reading of the language employed." (*Matter of Fabbri, supra,* at pp 240, 243.)

Somewhat similar dispositions in somewhat similar wills have been construed one way or another depending on the particular language and circumstances. (Cf. constructions denying the widow the entire estate: *Matter of Schieder,* 107 Misc 2d 1029; *Matter of Taitt,* 87 Misc 2d 586; and constructions favoring the widow: *Matter of Dearstine,* 26 AD2d 736; *Matter of Scheubel,* 43 Misc 2d 674.) But every will is unique; and every will construction requires

an effort to determine the intent of that particular testator as expressed in that particular will.

It being clear that the testator did not intend that his widow receive substantially 100% of his estate, what share then shall the widow receive? The obvious choices are the elective share, or the intestate share as if the son were a distributee. In view of the language, I am inclined to direct that the widow shall receive the larger of these, i.e., the intestate share as if decedent were survived by the widow and one child (cf. EPTL 4-1.1, subd [a], par [2]; 5-1.1, subd [a], par [1], cl [A]) which is incidentally quite close to what the elective share would be if there were no surviving issue, exceeding it by $2,000. (But cf. *Matter of Schieder,* 107 Misc 2d 1029, *supra,* where the Surrogate limited the widow's share to her elective share.)

The decree of the Surrogate's Court, New York County (MIDONICK, S.), dated September 25, 1981, should be modified, on the law and the facts, to the extent of striking the sixth, seventh and eighth decretal paragraphs and substituting therefor a decree adjudicating that the testator intended to give his widow under paragraph SIXTH of the will an intestate share of his estate computed as if the son were a distributee, and that the rest, residue and remainder of the estate (after the bequest to the widow and the other preresiduary bequests) shall pass in accordance with paragraph EIGHTH of the will, and the phrase "pursuant to Article SIXTH of his Will" in the last decretal paragraph should be stricken, and the decree is otherwise affirmed, without costs. Findings of fact inconsistent herewith should be reversed and new findings made as indicated in this opinion.

KUPFERMAN, J. (concurring). I am fully satisfied with the analysis by my confrere, Associate Justice SILVERMAN, and I concur in his conclusion. Nonetheless, I believe the same conclusion may be reached by considering the simple question of why the testator would have a provision leaving to his wife an intestate share (par SIXTH). No provision is made for his son, so the practical effect, if the son was still eligible to receive, was to leave a partial intestate vacuum (EPTL 4-1.1) to be filled by the sisters pursuant to paragraph EIGHTH. Would the testator let the son deprive the

testator's sisters of their share by simply having himself adopted? Obviously not. Therefore, he must have intended his sisters to receive the remaining intestate share.

CARRO and ASCH, JJ., concur with SILVERMAN, J.; KUPFERMAN, J., concurs with SILVERMAN, J., in a separate opinion; MURPHY, P. J., dissents and would affirm on the opinion of MIDONICK, S.

Decree, Surrogate's Court, New York County, entered on or about September 28, 1981, modified, on the law and the facts, to the extent of striking the sixth, seventh and eighth decretal paragraphs and substituting therefor a decree adjudicating that the testator intended to give his widow under paragraph SIXTH of the will an intestate share of his estate computed as if the son were a distributee, and that the rest, residue and remainder of the estate (after the bequest to the widow and the other preresiduary bequests) shall pass in accordance with paragraph EIGHTH of the will, and the phrase "pursuant to Article SIXTH of his Will" in the last decretal paragraph be stricken, and the decree is otherwise affirmed, and findings of fact inconsistent herewith are reversed and new findings made as indicated in the opinion of this court, without costs and without disbursements.