OPINION OF THE COURT
Bernard M. Bloom, S.
This is a proceeding to revoke letters of administration.
*234 This decision should remove any uncertainty as to the right to intestate distribution from one’s natural family members after adoption.
The decedent, Kenneth L. Etheridge, died intestate on June 11, 1984. A petition for appointment as administrator was presented by a nephew, Herbert Etheridge, who listed himself and 12 other nephews and nieces as the distributees. At a kinship hearing conducted before a law assistant-Referee, there was oral testimony that within his marriage to Marie Etheridge, the decedent had fathered a son whose given name was Roger, but it was shown also that a number of years later, on October 13, 1955, a final order of adoption made Roger the legal child of Angel Garay, whom his mother had married after her divorce from his natural father. Upon this and other kinship evidence which need not be detailed, letters of administration issued to Herbert Etheridge under decree dated February 21, 1985.
Roger Garay, who was not afforded citation in the administration proceeding, is the petitioner. He purports to be the sole distributee in intestacy and, as such, claims the right to be substituted as the decedent’s personal representative. In so maintaining, he concedes the accuracy of the proof received concerning his adoption by his stepfather, but urges that a mistake of law is inherent in the court’s tacit conclusion that he has no interest in his natural father’s estate. It is also alleged that a statutory ground exists for revocation of the letters in that they were granted by a false suggestion of material fact on the part of Herbert Etheridge (see, SCPA 711 [4]). But as the only matter which the administrator is accused of having misrepresented was with whom the beneficial interest in the estate lies, it is easily seen that aside from the addition of a hint of animus, this is only a restatement of the mistake of law argument in another form.
In 1955, when the petitioner’s adoption took place, the subject of rights of inheritance involving adopted persons, both in intestacy and under wills or other instruments, was addressed at length at former section 115 of the Domestic Relations Law. With respect to the former, it was provided that "The rights of a foster child to inheritance and succession from his natural parents remain unaffected by adoption.” (Domestic Relations Law former § 115, unnum para [2].) For a great number of adopted children, that privilege was more apparent than real since, under the general law of descent *235 and distribution found in the Decedent Estate Law as it then stood, a child who had been born out of wedlock, unless later legitimated by marriage of the parents, was a distributee of his or her mother only if she left surviving no legitimate issue and under no circumstances was a distributee of his or her father (Decedent Estate Law § 83 former [14]). But since Roger Etheridge was born within marriage, he was, of course, a presumptive intestate successor of his father, Kenneth L. Etheridge, and remained so after having become the adopted son of Angel Garay.
In 1961, section 115 of the Domestic Relations Law was renumbered section 117 without alteration of its text. (L 1961, ch 147.) However, major revision was in store.
Shortly after it came into being in 1962, the Temporary State Commission on the Modernization, Revision and Simplification of the Law of Estates, better known as the Bennett Commission, embarked upon a diligent study of the place of the adopted child in the law of intestacy in this State and, for comparative purposes, around the Nation. A report was prepared (Second Report of Bennett Commn, 1963 NY Legis Doc No. 19, Report No. 1.2C, at 148) which brought to the Legislature’s attention what were perceived to be anomalies in New York’s existing statutory and decisional law. One of these was that although a child’s right to take in intestacy from his natural parents after adoption was enshrined by statute, as noted above, and, though by case law, he could continue to be an heir of his other natural kindred as well (Matter of Adler, 202 Misc 1100 [Sur Ct, Bronx County 1952]; Matter of Gourlay, 173 Misc 930 [Sur Ct, Kings County 1940]; Matter of Monroe, 132 Misc 279 [Sur Ct, Westchester County 1928]; Matter of Landers, 100 Misc 635 [Sur Ct, Oneida County 1917]), the converse was not true; the natural parents, and, by extension, other biological relatives, were not distributees in the estate of a child who had been adopted (Domestic Relations Law § 117, unnum para [1]). Another was that the adopted child, while a distributee of the adoptive parents (Domestic Relations Law § 117, unnum para [3]), and a successor also of their natural and other adopted children and of their descendants (Domestic Relations Law § 117, former unnum para [7]), enjoyed no such status with respect to other kindred of the adoptive parents (Matter of Hall, 234 App Div 151 [3d Dept 1931], affd 259 NY 637 [1932]; Hopkins v Hopkins, 202 App Div 606 [4th Dept 1922], affd 236 NY 545 [1923]), yet kindred of the adoptive parents of any description could succeed to the intestate *236 property of the adoptee (Matter of Hollstein, 251 App Div 771 [3d Dept 1937]).
What concerned the Commission more than these incongruities, however, was the fact that the law operated to keep the child tied to his natural family though it was deemed socially and psychologically desirable that severance be complete and that the child be fully incorporated into the new family unit in all respects. It was argued that the harm that could be done in many instances by causing the natural family background to be revealed to those previously ignorant of it was so great as to outweigh the benefit to adopted children generally from the existing policy by which intestate succession in both family trees sometimes occurred. Another observation was that the retention of heirship rights from the biological family often created uncertainty in title to property, not only with respect to children known to have been adopted whose new identity and fate could not be ascertained but also in instances where no such child was known but whose existence could not be negatived with assurance.
At the same time, the Commission published a separate report the subject of which was the law governing inclusion or exclusion of adopted children as members of their new families where class designations such as "children,” "issue,” "descendants” and "heirs” in wills and trusts were encountered. (Second Report of Bennett Commn, 1963 NY Legis Doc No. 19, Report No. 1.3B, at 163.) Fault was found with the "precautionary addendum,” a rule of law dating to 1887 (L 1887, ch 703) which had found its way to Domestic Relations Law § 117 (former unnum para [4]) (see also, Domestic Relations Law § 117, former unnum para [8]). It provided that when an instrument made the passing or limitation over of real or personal property dependent upon the contingency of an individual dying without heirs, an adopted child should not be deemed the child of such person so as to defeat the rights of remaindermen. Not only was this rule as written in derogation of the recognition of the child as a full member of his adoptive family, but as it was the only statutory treatment of the matter of membership of adopted children in class designations, some courts had inferred from it a presumption against adopteds where the actual question presented was only of their sharing in a disposition to a class rather than taking to the exclusion of remaindermen.
In accordance with its views, the Commission drafted, and the 1963 Legislature accepted, a bill amending section 117 (L *237 1963, ch 406). The enactment gave adoptees distributive rights in the estates of those of their adoptive kindred from which they had theretofore been excluded, eliminated the precautionary addendum, and, in the following words, addressed the subject of interest here:
"The rights of a foster child to inheritance and succession from and through his natural parents shall terminate upon the making of the order of adoption except as hereinafter provided. * * *
"When a natural or foster parent, having lawful custody of a child, marries or remarries and consents that the stepfather or stepmother may adopt such child, such consent shall not relieve the parent so consenting of any parental duty toward such child nor shall such consent or the order of adoption affect the rights of such consenting spouse and such foster child to inherit from and through each other and their natural and adopted kindred.” (L 1963, ch 406; emphasis added.) The closing sentences of the amendment recited that it would apply to the estates or wills of persons dying on or after March 1, 1964, to inter vivos instruments executed on or after that date and to earlier instruments subject to revocation or amendment by the grantor. Wills of persons dying prior to that date and inter vivos instruments executed beforehand which could not be revoked or amended by the grantor were to continue to be governed by the provisions of section 117 in force prior to the amendment.
In 1966, again on the initiative and advice of the Bennett Commission (Fourth Report of Bennett Commn, 1965 NY Legis Doc No. 19, 1965 Supp to Report No. 1.2C, at 102), section 117 was amended in two respects. (L 1966, ch 14.) The first change was tightening of the language of the 1963 amendment concerning an adoption by the spouse of a natural parent of the child with the consent of said parent to foreclose any unintended inference that the child could assert intestate succession rights in both the paternal and maternal sides of his or her natural family after adoption. The new wording conveyed clearly that preservation of such rights was limited to the estates of the parent married to the adopting stepparent and such parent’s kindred. The other change, made because the 1963 amendment had been silent on the question of the extent, if any, to which children who had been or would be adopted would take under wills or lifetime dispositions made by members of their natural families, consisted of the *238 supplanting of the clause of the 1963 amendment which had prescribed its effect by the following purportedly retroactive provisions:
"This section shall apply only to the intestate descent and distribution of real and personal property and shall not affect the right of any child to distribution of property under the will of his natural parents or their natural or adopted kindred whether such natural parent or kindred shall have died heretofore or shall die hereafter or under any inter vivos instrument heretofore or hereafter executed by such natural parent or his or her kindred. * * *
"This act shall take effect immediately but shall be deemed to have been in force and effect from and after March first, nineteen hundred sixty-four.” (L 1966, ch 14.)
On the date of Kenneth L. Etheridge’s death in 1984, section 117 of the Domestic Relations Law remained unchanged from the time of the 1966 amendment aside from the purely stylistic replacement of the word "foster” by "adoptive” throughout the statute. (L 1970, ch 570, § 10.)
Petitioner claims the benefit of the law in force on the date of his adoption. In so doing, he does not deny, as indeed he could not, that the Legislature possessed ample power to alter the law of succession at any time while his interest as a presumptive distributee remained a mere expectancy (Matter of McGlone, 284 NY 527 [1940], affd sub nom. Irving Trust Co. v Day, 314 US 556 [1942]; Gilliam v Guaranty Trust Co., 186 NY 127 [1906]; Carpenter v Buffalo Gen. Elec. Co., 213 NY 101 [1914]; cf., Matter of Karron, 52 Misc 2d 367 [Sur Ct, Kings County 1966]), but rather contends that the 1963 amendment ushering in the new policy does not by its terms apply to those persons who had been adopted prior to its March 1, 1964 effective date nor does the 1966 amendment compel a contrary result.
The phrase "shall terminate upon the making of the order of adoption”, he argues, is oriented to the future, as is obvious from the tense of the verb used, the otherwise empty reference to the making of an order of adoption and the patent absurdity of positing that the succession rights of persons situated similarly to himself had been terminated upon the change in their legal parentage when in fact they had indisputably remained presumptive distributees of their biological parents under the law then governing the matter. Since the intendment of the statute is plain and clear, Mr. Garay *239 continues, there is no warrant to resort to anything else and the intention of its draftsman is irrelevant. (See, e.g., People v Graham, 55 NY2d 144 [1982].)
If, however, it is thought that an ambiguity exists, petitioner offers a canon of construction to yield the same result in favor of those adopted prior to March 1, 1964. Citation is made to a portion of an authoritative treatise on statutory interpretation devoted to determining when legislation shall be deemed to have taken effect:
"§ 53. Statutes affecting rights or liabilities
"A statute generally will not be applied retroactively where it would deprive one of a substantial right, or affect antecedent rights.
"As a general rule, a statute will not be applied retroactively where it would, in effect, deprive one of a substantial right, or affect, or interfere with, antecedent rights, or impose an unexpected liability, at least in the absence of an unequivocal expression in the statute that the Legislature intended that the statute should have such effect. So, a pre-existing right or liability, whether or not it is constitutionally protected from change, will not be affected by legislation, unless legislative intent to the contrary is obvious. The doubts, if any, will be resolved in favor of holding the subsequent statute to be prospective only.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 53.)
As observed by petitioner, between 1873, when legislation (L 1873, ch 830) was first enacted permitting adoption in this State (it having been a nonexistent status at common law), until the 1963 amendment to section 117 of the Domestic Relations Law, the distributive rights of adopted children had been expanded gradually by statute. The original enabling act left the child’s succession rights through his or her natural kin undisturbed while expressly withholding such rights with respect to the adoptive parents. When an 1887 amendment (L 1887, ch 703) created distributive rights in the estates of the adoptive parents by replacing the words "excepting the right of inheritance” in the 1873 statute with "including the right of inheritance” while keeping silent on the matter of heirship in the biological family, the result, of course, was that those who had been adopted thenceforth had a prospect of succeeding by operation of law to intestate property from both the natural kin and adoptive parents.
In 1896, the existing statute was redrawn as section 64 of *240 the nascent Domestic Relations Law. Its new form, so far as is here pertinent, provided explicitly that rights of inheritance and succession from the natural parents remain unaffected by adoption and that the adoptive parents and the minor have the right of inheritance from each other and that such rights extend to the heirs and next of kin of the minor and that such latter persons are the same as if the minor were the legitimate child born to the adoptors. (L 1896, ch 272, § 64.) In substance, the provisions referred to were carried forward through subsequent amendments and recodifications (L 1909, ch 19; L 1915, ch 352; L 1916, ch 453, § 3; L 1925, ch 608, § 2; L 1931, ch 562, § 7; L 1938, ch 606, § 1; L 1940, ch 442; L 1961, ch 147) until the sweeping changes brought via the 1963 amendment.
These points are well taken as far as they go but the simple fact is that they do not go far enough. Certainly the phrasing "shall terminate upon the making of the order of adoption” employed in section 117 since the 1963 amendment, standing alone, could lead the reader, especially one with knowledge of the long-standing policy that was being changed, to believe only those whose adoptions would be consummated in the future were envisioned. But the clauses of the 1963 and 1966 amendments prescribing their applicability are each sufficiently precise and direct as to leave no doubt but that the new policy as to intestate succession was to be implemented in the distribution of the estates of persons dying on or after March 1, 1964 without reference to the date of the adoption. And, as Mr. Garay has himself said, where such legislative intent clearly appears from the very language of the statute, there is no cause to resort to the constructional canon favoring preservation of antecedent rights and it must be given its stated effect. (McKinney’s Cons Laws of NY, Book 1, Statutes § 51.) In any event, a distinction must be made within the law pertaining to descent and distribution between retrospective operation and prospective operation based upon past events (see, McKinney’s Cons Laws of NY, Book 1, Statutes § 56), of which this is a fine example.
Moreover, the argument made by Roger Garay has been advanced before but has failed to find any acceptance. He attributes a host of adverse decisions (Matter of Heverly, 113 Misc 2d 925 [Sur Ct, Cattaraugus County 1981]; Matter of Nelson, 107 Misc 2d 1035 [Sur Ct, Erie County 1981]; Matter of Deflacieuz, 87 Misc 2d 845 [Sur Ct, Orange County 1976]; Matter of Blake, 62 Misc 2d 276 [Sur Ct, Erie County 1970]; *241 Matter of Trainor, 45 Misc 2d 316 [Sur Ct, Bronx County 1965]; Estate of DeRosa, NYLJ, Feb. 16, 1977, at 13, col 4 [Sur Ct, Richmond County]; Estate of Weinberg, NYLJ, July 29, 1976, at 10, col 6 [Sur Ct, Kings County]; Matter of Greenspan, NYLJ, Nov. 4, 1968, at 18, col 8 [Sur Ct, Kings County]), none of which was appealed, mainly to insufficient consideration of the problem. In particular, he notes that after his retirement from the Bench, the eminent author of one of these decisions professed to have come to the contrary conclusion after more study in a brief prepared without charge for an adoptee in Mr. Garay’s position in a case that was ultimately settled among the litigants (see, Matter of Kugelmass, Sur Ct, NY County, file No. 3653-1979). In that brief, a copy of which was provided to this court, he disavowed his earlier statement in the opinion in question that the intention of the Legislature to affect persons adopted before as well as on or after March 1, 1964 had been clearly expressed in the reports of the Bennett Commission, which had sponsored the 1963 amendment, and in the note appended to the bill. In actuality, it is true, those sources (Second Report of Bennett Commn, 1963 NY Legis Doc No. 19, at 147, Report No. 1.2C, at 148-160) do not unequivocally so indicate. On the other hand, neither are they indicative that inchoate rights were to be preserved. Petitioner omits mention, too, of the fact that in an opinion concerning allocation of a wrongful death recovery, the chairman of the Commission himself, Surrogate John D. Bennett, implied that a child adopted prior to March 1, 1964 could not be a distributee if his natural parent died on or after that date (see, Matter of Silverstein, 48 Misc 2d 1029 [Sur Ct, Nassau County 1966]).
If the wealth of case law from the various Surrogates’ Courts was insufficient to convince petitioner of the futility of his contention, any doubt should have been put to rest by a case which was ultimately heard at the highest level in this State.
In Matter of Ragone (116 Misc 2d 993 [Sur Ct, NY County 1981]), Surrogate Midonick entertained an application for revocation of preliminary letters testamentary conjoined with an application for construction of the propounded will which saw the testator’s widow, Josephine, pitted against his two sisters. At issue was the meaning to be ascribed to a bequest to Josephine of "such part of my estate as my wife would have received had I died intestate domiciled in the State of New York.” The residuary disposition was to the sisters and they were nominated as executrices. The testator, who died in 1980, *242 had fathered only one child, a son born to a previous marriage who had been adopted in 1959 by his stepfather and who disclaimed any possible right to participate in the proceedings. The Surrogate rejected the sisters’ argument that the will should be construed as having bequeathed to Josephine an amount equal to her elective share (see, EPTL 5-1.1). More importantly, for present purposes, he also rejected their alternative suggestion that she be deemed to have been given her intestate share as if her husband had been survived by her and one child. Instead, he expressly held that section 117 of the Domestic Relations Law precluded any taking by the biological son had the testator died without a will since the change worked by the 1963 amendment is operative as to those adopted prior to March 1, 1964 equally with those adopted later. Consequently, the widow was adjudged to be entitled to the entire estate after payment of preresiduary legacies.
The question whether the natural son of the testator remained a distributee in intestacy was fully briefed to the Appellate Division by the parties to the litigation and also by an amicus curiae. (20228 App Div Cases and Briefs, case 2 [July 1982].) Although that court modified the decision of the Surrogate by reducing the widow’s entitlement under the disputed bequest to an intestate share computed as if she and the testator’s natural son had been his distributees, it is unmistakable that the basis for the decision was the conviction that the will as a whole bespoke an intent to limit her share and to substantially bequeath the estate to his sisters, with perhaps the additional consideration that there was some reason to doubt whether the testator had known of his son’s adoption. (Matter of Ragone, 87 AD2d 457 [1st Dept 1982].) No issue was taken with the conclusion below that the son was not in fact a distributee in intestacy, other than a doubt briefly expressed in the separate opinion of one Justice. (87 AD2d, supra, at 466 [Kupferman, J., concurring].)
On appeal by the widow, the Court of Appeals likewise had the benefit of plenary exposition of the arguments pro and con on the relevancy of the date of adoption (13762 Ct App Cases and Briefs, case 1 [Apr. 1983]). The court chose to respond in summary fashion, reinstating the decree of the court at nisi prius "for reasons stated in the decision of former Surrogate millard l. midonick.” (Matter of Ragone, 58 NY2d 864, 866 [1983].)
Petitioner would have us discern the true meaning of the *243 Court of Appeals succinct decision in Ragone (supra) from a reference to it made in its opinion a few weeks later in Matter of Cord (58 NY2d 539 [1983]). Cord presented the question whether a boilerplate will clause placing the burden of all death taxes, both on estate and nontestamentary assets, on the residuary estate superseded a provision in an earlier inter vivos trust which directed the trustees to pay the executor the tax bill generated by the trust. In citing authority for the general proposition that extrinsic evidence is not admissible to vary or contradict an unambiguous expression of testamentary intent, Judge Fuchsberg, writing for the court (supra, at 544), adverted to "Matter of Ragone, 58 NY2d 864, revg 87 AD2d 457, for reasons stated by Surrogate Midonick at 116 Misc 2d 993, 997”. Because section 117 of the Domestic Relations Law was discussed on pages 999 and 1000 of the Surrogate’s opinion and not at page 997, petitioner maintains that Judge Midonick’s discussion as to the proper interpretation of that section was not among the reasons endorsed by the Court of Appeals in reinstating his decree in Ragone. This argument is skewed. Page 997 is the location at which the Surrogate had begun discussing the only point of law in Ragone which was pertinent to Cord. As a matter of fact, there was no conceivable basis for having restored the decree of the Surrogate’s Court in Ragone other than the Court of Appeals agreement with the finding that the widow would have been the sole distributee had her husband died intestate, ipso facto ruling out any interest for the natural son.
Finally, it is observed that section 117 has recently been substantially overhauled again (L 1986, ch 408 [eff Sept. 1, 1986]) to remove the uncertainty which remained as to the right to receive testamentary or other beneficial dispositions from one’s natural family members after adoption despite the 1966 amendment and the Court of Appeals decision of one such case in Matter of Best (66 NY2d 151 [1985]). No change was made with respect to any provision governing intestate succession, though the Law Revision Commission which shepherded the bill was well aware that the courts had uniformly applied the new thinking embodied in the 1963 and 1966 amendments irrespective of whether the change in legal parentage occurred before or after the March 1, 1964 effective date. (See, Mem of the Law Revision Commn Relating to Inheritance Rights of Children Adopted Out of a Class by *244 Persons Related to Them by Blood or Marriage, 1986 NY Legis Doc No. 65 [B], at n 13.)
For the foregoing reasons, Roger Garay is determined to have no cognizable interest in the estate and his petition to revoke letters of administration heretofore granted to Herbert Etheridge is denied.