OPINION OF THE COURT
Renee R. Roth, S.
In this construction proceeding, Linda Gilbert, an "adopted-out” child of decedent Irving Friedman, seeks a determination of her rights under her natural father’s will and also under a 1947 separation agreement (1947 agreement) entered into between her natural parents prior to their divorce.
The 1947 agreement, in relevant part, provided as follows: "seventh: The Husband agrees that if he makes a will he will bequeath and devise to his said child a share of his estate not less than the child would receive if he died intestate. The Husband represents that he has never executed any will.”
Mr. Friedman died on February 13, 1986 survived by his second wife and daughter. Under his will dated October 9, 1985, admitted to probate without objection, Mr. Friedman did not leave to Linda a share of his estate "not less than the child would receive if he died intestate”. Instead, he provided in paragraph second: "I give and bequeath the sum of Fifty Thousand ($50,000) dollars to my former daughter Linda Gilbert * * * With my consent, Linda has been adopted by Irving Schwartz of New York, New York.” Under paragraph eighth, Mr. Friedman included an in terrorem (no contest) clause (EPTL 3-3.5) which, in relevant part, provided: "If any beneficiary under this, my last will, shall object to probate * * * or shall institute, join in or carry on any action or proceeding to invalidate, set aside or modify any term or provision thereof * * * the legacy, devise or other disposition to such beneficiary under this will shall be deemed revoked”.
The question is whether Linda’s rights under the terms of the 1947 agreement were affected in any way by her "adoption-out” in 1954, seven years after the agreement and. 32 years before Mr. Friedman’s death. More precisely, were *94 Linda’s rights under the 1947 agreement affected by the 1964 change in Domestic Relations Law § 117 terminating the rights of adopted-out children to inherit in intestacy from their natural parents.
It is clear that if Linda was claiming an intestate share solely as a distributee of Irving Friedman, her claim would be barred, since distributees are determined under the law in effect at the time of decedent’s death (Irving Trust Co. v Day, 314 US 556, 562; Matter of Bump, 234 NY 60; Matter of White, 213 App Div 82; Matter of Ragone, 116 Misc 2d 993, 999, mod 87 AD2d 457, revd 58 NY2d 864; Matter of Etheridge, 136 Misc 2d 233; Matter of Heverley, 113 Misc 2d 925, 928). At the time of decedent’s death in 1986, the governing law (Domestic Relations Law § 117 [1] [b]) provided that "[t]he rights of an adoptive child to inheritance and succession from and through his natural parent shall terminate upon the making of the order of adoption”.
The above-quoted provision of Domestic Relations Law § 117 was not in effect in 1947. Indeed, it was not until March 1, 1964 that New York limited the inheritance rights of adopted-out children. The governing law in effect in 1947 when the agreement was executed (and in 1954 when Linda was adopted out) expressly permitted such a child to inherit freely from her natural parents (Domestic Relations Law § 115). It is noted parenthetically that Domestic Relations Law § 117 was recently amended, effective after Mr. Friedman’s death (Sept. 1, 1987), to restore the intestate rights of an adopted-out child like Linda.
Linda’s rights under the 1947 agreement are protected under contract law and by the statute itself.
As a third-party beneficiary of the 1947 agreement, Linda is a contract creditor of the estate (Matter of Granwell, 20 NY2d 91; Simonds v Simonds, 45 NY2d 233; McClare v Massachusetts Bonding & Ins. Co., 266 NY 371; Seaver v Ransom, 224 NY 233; Matter of Brown, 41 AD2d 275, revd on other grounds 33 NY2d 211; Matter of Orvis, 35 AD2d 538; Matter of Chilson, 28 AD2d 766).
It is observed that separation agreements are almost always a compromise of competing interests. Although in 1947 a man was required to support his former wife, the 1947 agreement contained no provision for the wife’s support. Rather, such agreement provided support for Linda in the amount of $20 weekly during her minority and further provided for her right *95 to inherit from Mr. Friedman’s estate when he died. Thus, it is clear that one of the purposes of that agreement was to provide postdeath financial benefit for Linda. The agreement stated that Mr. Friedman had not executed a will. If he had died intestate in 1947, Linda would have inherited as his only child (Decedent Estate Law § 83). The 1947 agreement therefore provided that if Mr. Friedman thereafter made a will, the will would make the same financial provision for her as if he were to die intestate. However, that agreement did not contemplate the possibility that Linda would be adopted. Nor did it make any provision that if Linda was adopted out or a law was enacted terminating the intestate' inheritance rights of adopted-out children, the paragraph seventh provision of the 1947 agreement would have no effect. In the absence of such a provision, Linda is entitled to enforce against Mr. Friedman’s estate her contractual right to an amount equal to her intestate share. By her adoption out, Linda does not lose any contractual rights under the 1947 agreement between her natural parents. An adopted-out child does not forfeit such vested contractual rights any more than such a child would forfeit a disposition left to her in the will of a natural parent from whom she had been adopted out (see, Domestic Relations Law § 117 [2] [a]).
Furthermore, the 1963 change in the law which terminated an adopted-out child’s right to inherit in intestacy from her natural parents contained a savings clause grandfathering the law in effect prior to March 1, 1964 (Domestic Relations Law § 117 [3]): "The provisions of law affected by the provisions of this section in force prior to March first, nineteen hundred sixty-four shall apply to the estates or wills of persons dying prior thereto and to lifetime instruments theretofore executed which on said date were not subject to grantor’s power to revoke or amend. ” (Domestic Relations Law § 117 [3] [emphasis added].)
This provision was intended, inter alla, to protect rights created by inter vivas instruments previously executed which were not subject to the grantor’s power to revoke and amend (see, Second Report of Temp St Commn on Modernization, Revision and Simplification of Law of Estates, 1963 NY Legis Doc No. 19, at 147).
The respondents (residuary beneficiaries) contend that the 1947 agreement is not grandfathered because decedent could have revoked or altered it with the consent of Linda’s mother. They are mistaken. The fact that all persons beneficially *96 interested, in an irrevocable trust may nevertheless join with the creator to revoke or amend it (FPTL 7-1.9) does not make such trust revocable for all purposes (see, 26 CFR 20.2038-1 [a] [2]), any more than a gift is deemed to be a revocable transfer because the beneficiary could return it. The key question is whether the grantor can unilaterally revoke or amend the instrument. In the case of the 1947 agreement (a "lifetime instrument”), the decedent is clearly the grantor with respect to the provisions for Linda. It is equally clear that he and his former wife had adverse interests. Thus, Mr. Friedman’s obligation to provide for Linda under such agreement was not subject to his power to revoke or amend.
To apply the 1963 statute retroactively to the 1947 agreement would deprive Linda of her status as decedent’s child after the execution of an irrevocable instrument making provision for her in reliance upon such status, a result that the savings clause was expressly enacted to prevent.
Accordingly, Linda’s right to inherit her intestate share from the decedent under the separation agreement was grandfathered by the statutory amendment in 1963.
Although the 1947 agreement did not contemplate Linda’s adoption out or the termination by amendments to Domestic Relations Law § 117 of her right to inherit from her natural father, that agreement indicates that Mr. Friedman, who was then a young man, contemplated that he might marry again and have additional children. By using the term intestate share, rather than a fractional share, Mr. Friedman ensured that his afterborn children would share equally in intestacy with Linda. Therefore, the amount of Linda’s intestate share is to be measured as of the death of Mr. Friedman in 1986 leaving a wife and two children (EPTL 4-1.1 [a] [1]).
Linda contends that she is entitled to receive the $50,000 disposition for her benefit in paragraph second of Mr. Friedman’s will in addition to her intestate share.
The general principle of law is that a legacy to a creditor is not a satisfaction of the debt unless the testator intended it to be (Reynolds v Robinson, 82 NY 103; Boughton v Flint, 74 NY 476, 482; Matter of Revson, 86 AD2d 872; Matter of Snell, 40 AD2d 33). Although testator’s intention may perhaps not be clear from the will itself (except in the in terrorem clause), it may be found by reading the will together with paragraph seventh of the 1947 agreement. In that provision, Mr. Friedman agreed that if he made a will he would leave Linda an *97 amount not less than her share if he died intestate. From the terms of the two provisions, it may fairly be inferred that Mr. Friedman intended the $50,000 disposition to be in satisfaction of his debt to Linda. Under the circumstances of this case, any other conclusion is untenable. Linda is therefore not entitled to both the $50,000 disposition and her intestate share.
The parties agree that Mr. Friedman failed to maintain the $5,000 insurance policy for Linda’s benefit as provided for in paragraph sixth of the 1947 agreement. This benefit for Linda was in addition to the intestate share benefit provided separately in paragraph seventh of the 1947 agreement. Under the express provision of the 1947 agreement, Linda is entitled to enforce this benefit against the estate.
The in terrorem clause in paragraph eighth of Mr. Friedman’s will has no effect here since Linda does not seek to "invalidate, set aside or modify any term or provision” of testator’s will. As discussed, her intestate share claim and her insurance claim are both predicated solely on the 1947 agreement and not on any provision of the will.
The final question is whether Linda is entitled to interest on her claims. Although EPTL 11-1.5 (d) provides for the payment of interest on legacies at specified rates, Linda is not a legatee nor are her claims based on any provision in the will. Linda has been determined to be a creditor. Creditors are ordinarily entitled to interest on the debt if not paid within a reasonable time after filing the claim. However, interest on the amount of an unliquidated claim, such as this intestate share claim, cannot be determined except on the account of the executor. Linda’s claim for interest must await such accounting.